UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GUANGZHOU CHAOYAN TECHNOLOGY CO., LTD., a China Limited Liability Company, | No. 2:25-cv-02635-RSM |
| | **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TRO** |
| Plaintiff, | |
| vs. | |
| ANKER INNOVATIONS LIMITED, a Hong Kong Limited Liability Company, | |
| Defendant. | |

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

# TABLE OF CONTENTS

I.  FACTUAL BACKGROUND ................................................................. 8

II. ARGUMENT ...................................................................................... 13

    A.  Legal Standards for Temporary Restraining Orders ................................. 13

    B.  GCTC's Request is Constitutionally Barred ............................................ 14

    C.  GCTC Is Unlikely to Succeed on Its Trademark Claims
        Because It Infringes Anker's HOMEBASE Trademark ........................... 16

        1.  The similarity of the marks: .................................................... 18

        2.  The relatedness of the goods: ................................................. 19

        3.  The marketing channels used and overlapping internet customers:............. 20

        4.  The strength of Anker's Homebase trademark:............................... 21

            a. Anker's "HomeBase" mark is a strong arbitrary trademark .................... 21

            b. Plaintiff's use of the identical trademark "HomeBase"
               on identical products does not constitute fair use ..................................... 25

        5.  Sophistication of Customers:.................................................... 26

        6.  Actual Confusion ................................................................. 26

        7.  Intent .............................................................................. 27

    D.  GCTC Is Unlikely to Succeed on Its Tortious Interference Claim........................... 27

    E.  GCTC Is Unlikely to Succeed on Its Consumer Protection Act Claim..................... 30

    F.  GCTC Has Suffered No Irreparable Harm .............................................. 31

    G.  The Balance of the Equities Favors Denial of a Temporary Restraining Order........ 34

    H.  The Public Interest Strongly Disfavors Entering a Temporary Restraining Order.... 35

    I.  If the Court Were to Enter a Temporary Restraining Order,
        It Should Require a Bond in the Amount of GCTC's Potential Profits.................... 36

III. CONCLUSION................................................................................... 37

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 2
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

TABLE OF AUTHORITIES

**Cases**

*ADM Milling Co. v. Columbia Plateau Producers, L.L.C.*, No. 20-cv-0343-TOR, 2020 WL 5802344, at *5 (E.D. Wash. Sept. 29, 2020)...................................................................... 33

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) .................................................................................. 13

*Alsworth v. Seybert*, 323 P. 3d 47, 56-57 (Alaska 2014)................................................................................... 15

*Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1167-69 (W.D. Wash. 2010) ................................................... 15

*AMF Inc. v. Sleekcraft Boats* ........................................................................................... 17

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ......................................... 17

*Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir.1980)........................................................................... 14

*Anderson*, 612 F.2d at 1115.............................................................................................. 14

*Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003) ............................................................... 13

*Balboa Village Island Inn, Inc. v. Lemen*, 156 P.3d 339, 350 (Cal. 2007)............................................................................... 16

*Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 889 (C.D. Cal. 2020) ................. 29

*Blackstone*, 2022 WL 16553034, at *6 .......................................................................... 31

*Brookfield Comms.*, 174 F.3d at 106 .............................................................................. 26

*Brookfield Comms.*, 174 F.3d at 1066 ............................................................................ 26

*Brookfield Comms., Inc., v. West Coast Enter. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) ........ 17

*Brookfield Comms/*, 174 F.3d at 1055 ........................................................................... 19

*Brookfield*, 174 F3d at 1066............................................................................................ 22

*Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ................ 32

*Century 21 Real Estate Corp.*, 970 F.2d 874,  (Fed. Cir. 1992)....................................... 20

*Changsha Suda Elec. Com. LLC v. Guangzhou Yimei Cosmetics Co.*, No. 2:25-cv-01978-LK, 2025 WL 3022254 (W.D. Wash. Oct. 29, 2025) ....................................................... 33

*Clicks Billiards Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) ............................................................... 17

*Clicks*, 251 F.3d at 1265.................................................................................................. 26

*Design Furnishings, Inc. v. Zen Path LLC*, No. 10-cv-02765-WBS, 2010 WL 4321568, at *5 (E.D. Cal. Oct. 21, 2010) ...................................................................................... 36

*Elcon Const. Inc. v. E. Wash. Univ.*, 273 P.3d 965, 971-72 (2012) .................................. 30

*Ford Motor Co. v. Summit Motor Prods. Inc.*, 930 F.2d 277, 293 (3d Cir. 1991)......................... 26

*Fortune Dynamic v. Victoria's Secret Stores Brand*, 618 F.3d 1025, 1033 (9th Cir. 2010) ......... 22

*Fortune Dynamic*, 618 F.3d at 1033 .............................................................................. 23

*Fortune Dynamic, Inc.*, 618 F.3d at 1035 ...................................................................... 20

*Gale Force Nine LLC v. Wizards of the Coast LLC.* No. 20-cv-01700-BAT, 2020 WL 7133507, at *3 (W.D. Wash. Nov. 25, 2020) ...................................................................... 31

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 3
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

*Gale Force Nine*, 2020 WL 7133507, at *3 ................................................................ 32

*Gale Force Nine*, 2020 WL 7133507, at *4 ................................................................ 33

*Garcia v. Google, Inc.*,
    786 F.3d 733, 740 (9th Cir. 2015) ........................................................................ 14

*Godox Photo Equip. Co. Ltd. v. Profoto Aktiebolag*, No. 25-cv-00502-KKE, 2025 WL 1627188, at *1 (W.D. Wash. May 8, 2025). ........................................................................ 13

*Godox Photo Equip. Co. Ltd. v. Profoto Aktiebolag*,
    No. 25-cv-00502-KKE, 2025 WL 2172705, at *3 (W.D. Wash. July 31, 2025) ..................... 14

*Goto.com Inc. v. The Walt Disney Company*, 202 F.3d 1199, 1205 (9th Cir. 2000) .................... 17

*Goto.com v. Walt Disney Co.*, 202 F.3d at 1206. ........................................................... 18

*Goto.com*, 202 F.3d at 1199 ................................................................................. 19

*Goto.com*, 202 F.3d at 1205 ................................................................................. 17

*Goto.com*, 202 F.3d at 1207 ............................................................................. 20, 21

*Group14 Techs.*, 2023 WL 3599580, at * 4 ................................................................ 31

*Group14 Techs., Inc. v. Nexeon Ltd.*, No. 22-cv-01354, 2023 WL 3599580, at *3 (W.D. Wash. May 23, 2023) ............................................................................................ 28

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986) 30

*Hangman Ridge*, 719 P.2d at 535); *see also Blackstone Int'l, Ltd. v. E2 Ltd.*, No. 20-cv-1686-TSZ, 2022 WL 16553034, at *6 (W.D. Wash. Oct. 31, 2022) ................................ 31

*Hangman Ridge*, 719 P.3d at 538. .......................................................................... 31

*Id.* at 606 ..................................................................................................... 24

*IMEG Consultants Corp. v. Delta E Consulting, LLC*, No. 24-cv-01916-RAJ, 2025 WL 1371507, at *4 (W.D. Wash. May 12, 2025) .......................................................................... 28

*In re Marriage of Meredith*, 201 P.3d 1056, 1061 (Wash. Ct. App. 2009) .................................. 15

*Ironhawk Technologies Inc. v. Dropbox*,
    2 F.4th 1150, 1159-1160 (9th Cir. 2021) .................................................................. 17

*Ironhawk Techs., Inc. v. Dropbox Inc.*, 2 F.4th at 1163-64 ................................................ 20

*Ironhawk*, 2 F.4th at 1164. ................................................................................... 19

*Keane v. 40 Years, Inc.*, No. 18-cv-001768-RSM, 2019 WL 77436, at *5 (W.D. Wash. Jan. 2, 2019) ......................................................................................................... 32

*KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005) .. 24

*KP Permanent*, 408 F.3d at 606. ............................................................................. 24

*Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997) ............................. 28

*Leingang*, 930 P.2d at 297 ................................................................................... 30

*Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d at 933-934 ................................................ 19

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873, 878-79 (9th Cir. 2009) ..................................................................... 14

*Marlyn*, 571 F.3d at 879 ..................................................................................... 14

*Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866 (C.D. Cal. 2021) ... 35

*Moore v. Comm. Aircraft Interiors, LLC*, 278 P. 3d 197, 200 (Wash. Ct. App. 2012) ................. 29

*Moore*, 278 P. 3d at 201 ..................................................................................... 30

*Network Automation v. Advanced Sys. Concepts*, 638 F.3d 11437 (9th Cir. 2011) ...................... 19

No. 20-cv-01700-RAJ-BAT, 2020 WL 7059238 (W.D. Wash. Dec. 2, 2020) ............................. 32

*O'Donnell/Salvatori Inc. v. Microsoft Corp.*, No. 20-cv-00882-MLP, 2021 WL 535128, at *5 (W.D. Wash. Feb. 12, 2021) ................................................................................ 28

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

*Park N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 330 (9th Cir. 1983) .......................... 24

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ............................................................................... 16

*Pom Wonderful v. Hubbard*, 775 F.3d 1118, (9th Cir. 2014) ........................................... 20

*Pom Wonderful, LLC v. Hubbard*, No. cv-13-06917 RGK, 2016 WL 3621281, *11-13 (C.D. Cal. June 29, 2016) ............................................................................................................ 19

*Potter v. Clear Recon Corp.*, No. 24-cv-01173-LK, 2025 WL 2223454, at *5 (W.D. Wash. Aug. 5, 2025) ............................................................................................................... 30

*Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190 (9th Cir. 2011) .................................. 20

*Shenzhen Root Tech. Co., Ltd. v. Chiaro Tech. Ltd.*,
    No. 23-cv-00631-JHC, 2023 WL 3937394, at *3 (W.D. Wash. May 17, 2023) ..................... 14

*Sleekcraft*, 588 F.2d at 348 n.10 ............................................................................... 20

*SnapRays v. Lighting Defense Group*, 100 F.4th 1371 (Fed. Cir. 2024) ........................................ 29

*Starbucks Corp. v. McKinney*,
    144 S. Ct. 1570, 1576 (2024) ................................................................................ 13

*Starbucks*, 144 S. Ct. at 1576 .................................................................................. 31

*Stuc-O-Flex Int'l, Inc. v. Low and Bonar, Inc.*, No. 18-cv-01386, 2019 WL 4688803, at *6 (W.D. Wash. Sept. 26, 2019) .................................................................................................. 28

*Stuc-O-Flex*, 2019 WL 4688803, at *6 ....................................................................... 28

*Thane International v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002) ........................... 17

*Thane*, 305 F.3d at 901 .......................................................................................... 17

Thane, 305 F.3d at 901 citing Brookfield Communications, Inc., v. West Coast Entertainment Corporation, 174 F.3d 1036 (9th Cir. 1999) ............................................................... 18

*Topline Corp. v. 4273371 Canada Inc.*, No. C07-938Z, 2007 WL 2332471 *4 (W.D. Wash. Aug. 13, 2007) ............................................................................................................. 16

*Unelko Corp. v. Rooney*,
    912 F.2d 1049, 1058 (9th Cir. 1990) ...................................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7, 22 (2008) ........................................................................................ 13

*Zero Cloud One Intelligent Tech. (Hangzhou) Co. Ltd. v. Flying Heliball LLC*, No. 24-cv-01699-JNW, 2024 WL 4665594, at *3 (W.D. Wash. Nov. 4, 2024) ................................................ 14

**Statutes**

15 U.S.C. § 1115(a) .................................................................................................. 9

17 U.S.C. § 1117(a) .................................................................................................. 29

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 5
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

# I. FACTUAL BACKGROUND

Anker is a global smart hardware company that sells a wide variety of high-quality tech products as part of the eufy®, Anker®, SoundCore®, and Nebula product lines. Declaration of Larry Li ("Li Decl."), ¶ 3. Among the products sold as part of the eufy line are security systems; Anker has won numerous design and product awards, including for its eufy products. *Id.*, ¶ 8-13. In fact, eufy products consistently appear on "best of" lists for smart home and home security devices published by leading publications. *Id.* ¶ 14.

By February 2019, Anker began using the trademark HOMEBASE (styled as "HomeBase") in relation to its eufy security systems. *Id.*, ¶ 5; Declaration of Anna Antonova ("Antonova Decl."), ¶ 3. Since that time, Anker has consistently used the HOMEBASE trademark in relation to eufy security system devices that can record and locally store and backup data, such as security camera footage. In light of that use, Anker filed an application to register its HOMEBASE trademark with the U.S. Patent and Trademark Office; on August 19, 2025, the USPTO issued Registration No.7,902,551 to Anker. *Id.*

Since its first use, eufy has released multiple models of it HomeBase devices. Today, eufy promotes its HomeBase™ 380 as the "Heart and Soul of the eufy Security Ecosystem":

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 8
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1



Li Decl., ¶ 21. As the eufy security hub says, the HomeBase™ 380 provides "Centralized Storage: Each device passes captured footage to HomeBase™ S380 to be analyzed, encrypted, and stored for later viewing." *Id.* Eufy has spent millions of dollars promoting its security systems with HOMEBASE components. *Id.*, ¶ 10. It features the HOMEBASE trademark prominently on packaging:

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

and also ensures that the HOMEBASE trademark appears on the device itself:



*Id.*, ¶ 22-23. Eufy sells products bearing its HOMEBASE trademark through its own website, through third party websites (including Amazon and Walmart), and through retail locations (such as Best Buy). *Id.*, ¶ 28-30.

At some point after Anker started using the HOMEBASE trademark for security systems, a company named "Beijing Seven Talents Technology Co. Ltd." ("Beijing Seven Talents") decided to copy Anker and use the HOMEBASE trademark on its security systems. Beijing Seven Talents is the company behind Aosu – it applied for and was issued the AOSU trademark (Registration No. 7,173,211) referenced in Guangzhou Chaoyan Technology Co. Ltd.'s ("GCTC's") Motion for TRO. Antonova Decl., ¶ 4. In fact, in its trademark application, filed on June 20, 2022, Beijing Seven Talents provided specimens showing that it, not GCTC, was selling Aosu security system products in the United States through Amazon.com. *Id.*, ¶ 5. Beijing Seven Talents has organized its business to sell through numerous companies: among others, AOSU LIFE PTE. LTD. (Singapore); Shenzhen Zhiling Technology Co., Ltd.; Hong Kong Glazero

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 10
Case No.: 2:25-cv-02635-RSM

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
401 UNION STREET ● SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 ● (206) 689-8501 FAX

4927-7833-7669, v. 1

International Trade Co.; and Suzhou Weidi Technology Co., Ltd., as well as GCTC,

manufacture, offer for sale, sell, and import security system products infringing the

HOMEBASE trademark. Li Decl., Ex. J.

The Aosu products use Anker's HOMEBASE trademark on the same types of security

system products as Anker. *Id.*, ¶ 37. That is, the security footage storage unit for Aosu security

systems is described as the "HomeBase", highlighting its benefit as "a HomeBase recorder with

32 GB local storage for encrypted video, supporting up to two months of loop recording":




Li Decl., Ex. B. The HOMEBASE trademark (again styled as "HomeBase") appears on the

device itself:

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 11
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

Antonova Decl, Ex. E. And infringing Aosu products bearing the HOMEBASE trademark are sold through the aosulife.com website, through third party websites (including Amazon and Walmart), and through retail locations (such as Best Buy). Li Decl., ¶ 32-34.

In light of the infringement, Anker reached out to two companies selling AOSU security system products, demanding that they stop selling product infringing Anker's HOMEBASE trademark on Amazon.de. On December 4, 2025, Anker sent a detailed cease-and-desist letter to Suzhou Weidi Technology Co., Ltd.; on December 10, 2025, it sent a detailed cease-and-desist letter to Shenzhen Zhiling. Li Decl., ¶ 52. Suzhou Weidi never responded; Shenzhen Zhiling responded and asked for until January 22, 2026 to provide a substantive response. *Id., ¶ 53*. However, on December 19, 2025, GCTC rushed to court and filed this declaratory judgment lawsuit. Dkt. # 1. Five days later, Anker (and other Anker entities) filed a direct action asserting design patent infringement, trademark infringement, and unfair competition against Beijing Seven Talents, AOSU LIFE; Shenzhen Zhiling; Hong Kong Glazero; and GCTC in the Northern

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 12
Case No.:  2:25-cv-02635-RSM

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

District of Illinois, where one of the Anker entities has its domestic place of business. Li Decl., ¶ 56, Ex. J.

## II. ARGUMENT

### A. Legal Standards for Temporary Restraining Orders

In seeking a temporary restraining order ("TRO"), GCTC is seeking an "extraordinary remedy that may only be awarded upon a clear showing that [it] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "[A] plaintiff seeking a [temporary restraining order] must make a clear showing that '[it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.' " *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (quoting *Winter*, 555 U.S. at 20). To obtain relief, a party must make a clear showing on all four of these elements, known as the *Winter* factors, *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), and "must ***establish*** at the very least ***both*** of the first two factors, *i.e.*, a likelihood of success on the merits and irreparable harm." *Godox Photo Equip. Co. Ltd. v. Profoto Aktiebolag*, No. 25-cv-00502-KKE, 2025 WL 1627188, at *1 (W.D. Wash. May 8, 2025) (emphasis added) (quoting *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003)). Thus, if GCTC's showing of both likelihood of success and irreparable harm is not clear, if Anker sufficiently rebuts either showing, or if the showing on all four *Winter* factors does not tip strongly in GCTC's favor, the motion should be denied.

GCTC's burden is especially heavy here, as it is requesting that the Court order Anker to take the affirmative step of withdrawing its Amazon trademark complaints through a mandatory injunction. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 13
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

(9th Cir. 2009); *see also Shenzhen Root Tech. Co., Ltd. v. Chiaro Tech. Ltd.*, No. 23-cv-00631-JHC, 2023 WL 3937394, at *3 (W.D. Wash. May 17, 2023); *see* Dkt. # 7-1, p. 2. "A mandatory injunction 'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Marlyn*, 571 F.3d at 879 (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir.1980)). As a result, "mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (quoting *Anderson*, 612 F.2d at 1115); *Godox Photo Equip. Co. Ltd. v. Profoto Aktiebolag*, No. 25-cv-00502-KKE, 2025 WL 2172705, at *3 (W.D. Wash. July 31, 2025). GCTC would therefore have to "establish that the law and facts ***clearly favor*** [its] position, not simply that [it] is likely to succeed." *Zero Cloud One Intelligent Tech. (Hangzhou) Co. Ltd. v. Flying Heiball LLC*, No. 24-cv-01699-JNW, 2024 WL 4665594, at *3 (W.D. Wash. Nov. 4, 2024) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original)). GCTC cannot carry that burden, and Anker's rebuttal here shows that GCTC will not succeed on the merits, that it is not suffering irreparable harm, that the balance of equities tips in Anker's favor, and that the public interest is served by denying the motion.

### B.   GCTC's Request is Constitutionally Barred

Before the Court even considers the merits of GCTC's motion, it should deny it because the remedy sought would violate the First Amendment of the U.S. Constitution. The requested remedy is both compelled speech and a prior restraint on future speech – forcing Anker to engage in certain commercial speech communications directed to Amazon (withdrawal of current complaints) and denying it the right to engage in other commercial speech communications (prohibiting future complaints). At any time before a full adjudication on the

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 14
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

merits of the claims – rather than in the haste and speculation required by the temporary restraining order process – such a remedy would violate Anker's freedom of speech. As a result, the Court should deny GCTC's motion out of hand.

To the extent that GCTC's motion is based on its counts for tortious interference with business relationship and expectancies (Count III) or violation of the Washington Consumer Protection Act (Count IV), it is long established that those claims "are subject to the same first amendment requirements that govern actions for defamation." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990). And while trademark infringement and validity issues normally do not implicate the First Amendment, the remedies requested here do. Specifically, GCTC is specifically seeking speech-related remedies: compelled communications with Amazon to withdraw Anker's complaints and a prohibition on further complaint communications. Dkt. # 7-1. In a different context, this District has held that court-ordered revelation of communications with Amazon could be considered covered – and barred – by the First Amendment. *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154, 1167-69 (W.D. Wash. 2010) (prohibiting compelled revelation of communications between buyers and Amazon). Thus, the First Amendment is implicated in Guangzhou's requested relief.

Prior restraint of speech is, of course, almost totally prohibited by the First Amendment. *See*, *e.g.*, *In re Marriage of Meredith*, 201 P.3d 1056, 1061 (Wash. Ct. App. 2009) (quoting U.S. Supreme Court cases to overturn injunction even after finding of defamation). But the First Amendment is even more hostile to restraints on speech prior to final adjudication of the merits: "Preliminary injunctions are almost always held to be unconstitutional burdens on speech because they involve restraints on speech before the speech has been fully adjudged to not be constitutionally protected." *Alsworth v. Seybert*, 323 P. 3d 47, 56-57 (Alaska 2014) (citing U.S.

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 15
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

Supreme Court cases); *see also Balboa Village Island Inn, Inc. v. Lemen*, 156 P.3d 339, 350 (Cal. 2007). That is especially true because GCTC seeks a mandatory injunction, compelling Anker to communicate with Amazon to withdraw its complaints. The combination is an insurmountable barrier to the entry of a TRO.[1]

**C.      GCTC Is Unlikely to Succeed on Its Trademark Claims Because It Infringes Anker's HOMEBASE Trademark**

The requested TRO must be denied because as demonstrated below and in the accompanying evidentiary support, Plaintiff is unlikely to succeed on the merits of its declaratory judgment claims. Plaintiff has failed to show that it is unlikely to have infringed the HomeBase trademark because the likelihood of confusion factors demonstrate likelihood of consumer confusion exists.

Defendant is the owner of a United States Federal trademark registration for its trademark "HomeBase." Antonova Decl., ¶ 3. Federal registration of a trademark endows it with a *strong* presumption of validity including the specific presumption that the trademark is not generic. *Topline Corp. v. 4273371 Canada Inc.*, No. C07-938Z, 2007 WL 2332471 *4 (W.D. Wash. Aug. 13, 2007) (emphasis added). Registration of a mark is *prima facie* evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration. *See* 15 U.S.C. § 1115(a). *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014).

---

[1] Anker is aware that TROs and preliminary injunctions have been entered to compel the withdrawal of Amazon complaints, but is not aware of any such case in which the owner of IP rights has raised its First Amendment rights.

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 16
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

Infringement of a federally registered trademark is established where use of a confusingly similar trademark is likely to confuse customers or potential customers as to source, affiliation, connection, relationship, approval, sponsorship or endorsement between two products or companies. *Ironhawk Technologies Inc. v. Dropbox*, 2 F.4th 1150, 1159-1160 (9th Cir. 2021); *Goto.com Inc. v. The Walt Disney Company*, 202 F.3d 1199, 1205 (9th Cir. 2000). In order to determine likelihood of confusion, Courts evaluate eight intensely "factual elements" or factors: (1) the strength of the mark; (2) the similarity of the marks; (3) the proximity or relatedness of the goods or services; (4) the Defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion of product lines; (8) purchasers' likely degree of care based on type of goods. *Clicks Billiards Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001); *Thane International v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002) ("We ordinarily rely on an eight factor test, first articulated in *AMF Inc. v. Sleekcraft Boats*. . . to help determine if a likelihood of confusion exists" citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)); *Goto.com*, 202 F.3d at 1205 (listing *Sleekcraft* likelihood of confusion factors).

As the Ninth Circuit has instructed, "unless properly used, this long list of factors has the potential to befuddle the inquiry." *Thane*, 305 F.3d at 901. "The list of factors is not a score card - - whether a party 'wins' a majority of the factors is not the point." *Id.*

> Some factors are much more helpful than others and the relative importance of each individual factor will be case specific. . . . [I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors.

*Thane*, 305 F.3d at 901 (citing *Brookfield Comms., Inc., v. West Coast Enter. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999)); *Goto.com*, 202 F.3d at 1205. "In the context of the web in

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 17
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

particular, the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the 'simultaneous use of the web as a marketing channel.'" *Goto.com*, 202 F.3d at 1205 (citing *Brookfield Comms.*,. 174 F.3d at 1054 n.16). Likelihood of confusion can exist based on these three factors alone. 202 F.3d at 1207.

When the relevant likelihood of confusion factors are analyzed here, Plaintiff is unable to establish that it will succeed on the merits as the evidence shows a likelihood of confusion exists based on the three most important likelihood of confusion factors: (1) the similarity of the marks, (2) the relatedness of the goods and (3) the simultaneous use of the web as a significant overlapping marketing channel.

### 1.    The similarity of the marks:

As the similarities between the two marks increase, so too does the likelihood of confusion. *Goto.com v. Walt Disney Co.*, 202 F.3d at 1206.

The marks here are identical. Anker's registered trademark is HOMEBASE, Anker uses its mark "HomeBase" on its products and Plaintiff uses the identical mark "HomeBase" or "Homebase" on or in connection with its infringing products. This factor -- that the marks are identical is uncontroverted by the evidence. *See* Li Decl., ¶ 20-47; Ex. A-F. The fact that the marks are identical weights in favor of likelihood of confusion. *Id*.

Plaintiffs only argument is that Plaintiff uses "HomeBase" rather than "HOMEBASE" but this argument fails both on the facts and the law. First, Anker uses "HomeBase" on its products. *See id.* ¶ 21. Plaintiff admits in its papers that it too, uses the identical "HomeBase" or "Homebase" mark on and in connection with its products. Dkt. # 7, p. 3. Anker's trademark registration makes no claim as to font, style, capitals or any other restrictions – it is a word mark so any confusingly similar use of the word on related goods is covered by the Registration. *Pom

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 18
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

*Wonderful, LLC v. Hubbard*, No. cv-13-06917 RGK, 2016 WL 3621281, *11-13 (C.D. Cal. June 29, 2016).  Further, similarity is best judged by sight, sound, and meaning.  *Id*. at 11., *Goto.com*, 202 F.3d at 1199.  Here the marks "HomeBase" and "HomeBase" are identical in sight, sound and meaning, as is "HOMEBASE" and HomeBase."  The Ninth Circuit has already expressly instructed that identical words that differ only in capitalization or other font differences are similar and highly confusing.  *Brookfield Comms/*, 174 F.3d at 1055 (identical words that differ in capitalization are essentially identical -- capitalization and minor difference are inconsequential).

Plaintiff's argument in its papers that its use of its Aosu house mark along with its infringing "HomeBase" mark somehow lessens the confusion has been squarely rejected by the Ninth Circuit.  Indeed, the Ninth Circuit has cogently explained that use of a house mark actually aggravates consumer confusion:

> [The] competitor's use of its house mark *[does] not negate the similarity of the marks* because use of the house mark 'may serve to create reverse confusion. . .'' that the competitor, and not the Plaintiff, is the source, sponsor, affiliated, connected or related company, or licensed or approved company for the product.

*Ironhawk*, 2 F.4th at 1164 (emphasis added); *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d at 933-934.

This likelihood of confusion factor weighs heavily in favor of confusion and in Anker's favor.

### 2. The relatedness of the goods:

Under this factor the question is whether the goods are related.  *Network Automation v. Advanced Sys. Concepts*, 638 F.3d 1137 (9th Cir. 2011).  Where goods are related or complimentary, the danger of consumer confusion is heightened.  *Fortune Dynamic, Inc.*, 618

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 19
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

F.3d at 1035.  Goods are related if they are complimentary or sold to the same class of

purchasers, or are similar in use and function.  *Ironhawk*, 2 F.4th at 1163-64 (*citing Sleekcraft*,

599 F.2d at 348 n.10); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1212 (9th Cir.

2011).

Here there is no dispute that the goods are related – they are the same types of products --

home security systems.  *See* Li Decl.

### 3. The marketing channels used and overlapping internet customers:

In assessing marketing channel convergence, courts primarily consider whether the

parties' customer bases overlap and how the parties price, market and advertise their products.

*Pom Wonderful v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014).  As long as the general class

of purchasers is the same for both products, it is irrelevant whether they are sold in identical

stores, agents or websites, as long as the trade channel is the same *i.e.* retail v. wholesale.  *Id*. at

1130 (citing *Century 21 Real Estate Corp. Century Life of Am.*, 970 F.2d 874, 877 (Fed. Cir.

1992) (a channel of trade includes the same type of distribution channel)).

The Ninth Circuit has consistently found that where, as here, two competing parties use

the web as a substantial marketing and advertising channel this factor exacerbates the likelihood

of confusion:

> Both *Goto* and *Disney* use the web as a substantial marketing and advertising
> channel. . . .  In Brookfield we stated that the use of the web is a factor 'that
> courts have consistently recognized as exacerbating likelihood of confusion.'  174
> F.3d at 1057 (citations omitted).  We now reiterate that the Web, as a marketing
> channel, is particularly susceptible to a likelihood of confusion since . . . it allows
> for competing marks to be encountered at the same time, on the same screen.

*Goto.com*, 202 F.3d at 1207.

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 20
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

There is no dispute that both parties, Anker and Plaintiff market, sell, advertise and distribute their products on the web to customers through online internet retailers and that their customer base is therefore identical. Both parties sell their home security systems on the internet through numerous online retail stores such as Amazon and through additional third party online retailers such as Target, Walmart, Best Buy, etc. See Li Decl., ¶¶ 20-44, Ex. B-E. Here confusion is exacerbated because the parties use the web as their primary marketing, advertising and selling channel and there is undisputed overlap of internet customers who see both Anker's mark and Plaintiff's infringing mark at the same time, on the same screen, while internet shopping. *See* Li Decl., Ex. B, C, E.

The first three *Sleekcraft* factors discussed above (1) similarity of marks; (2) related goods and (3) the simultaneous use of the internet as a substantial marketing channel are the three most important *Sleekcraft* factors and "this trinity constitutes the most crucial body of the *Sleekcraft* analysis. . ." *Goto.com*, 202 F.3d at 1207. As in *Goto.com*, these three *Sleekcraft* factors alone demonstrate that customer confusion is likely here. *Id.*

### 4. The strength of Anker's Homebase trademark:

#### a. Anker's "HomeBase" mark is a strong arbitrary trademark

"Trademark law offers greater protection to marks that are strong *i.e.* distinctive." *Iron Hawk*, 2 F.4th at 1162. Marks are classified into one of five categories of increasing distinctiveness that warrant increasing protection: (1) generic (2) descriptive (3) suggestive (4) arbitrary (5) fanciful. Where the patent and trademark office issues a registration without requiring proof of secondary meaning, the federal registration provides *prima facie* evidence that the mark is inherently distinctive. *Id.*

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 21
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

An arbitrary trademark uses a word that has no logical connection or inherent meaning to the product or service it identifies ". . . such as Apple computers and Camel cigarettes. . . ." *Fortune Dynamic v. Victoria's Secret Stores Brand*, 618 F.3d 1025, 1033 (9th Cir. 2010). These arbitrary marks are inherently distinctive because there is no logical link between the mark and the good. *Id*. These words have a dictionary meaning that is completely unconnected to the goods sold under these marks. *See id.* at 1032-1033 (A suitable starting place for assessing the level of distinctiveness for a mark is the dictionary).

Here, Anker's "HOMEBASE" trademark is arbitrary for security systems and storage devices. This word HomeBase all as one word, does not appear in any English language dictionary. This fact demonstrates its arbitrary and distinctive use as a source identifier with no connection to the attributes of the Anker's security systems. *Brookfield*, 174 F3d at 1066 (use of word "Moviebuff," all as one word is not descriptive because the word does not appear in any dictionary as a word and is proof of distinctiveness and source identification). Only "Home Base" as two words appears in standard English language dictionaries. Antonova Decl., ¶ 14, Ex. H. The most common definition of HOMEBASE[2] in relevant dictionaries is "Baseball base consisting of a rubber slab where the batter stands; it must be touched by a baserunner in order to score." *Id*.

The second less common definition of "Home Base" is "the office that serves as the administrative center of an enterprise." *Id*.

---

[2] At the very least, Anker's "HOMEBASE" mark is suggestive because it requires consumers to use their imagination to determine a relationship or link to the product.

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

Anker's "HOMEBASE" security systems and data storage devices have nothing to do with baseball or an office that serves as the administrative center of an enterprise. Thus, just like Apple for computers or Camel for cigarettes, HOMEBASE is arbitrary as a matter of law and inherently distinctive for Anker's security systems, and entitled to the strongest protection. *See Fortune Dynamic*, 618 F.3d at 1033.

The products on which Anker registered its "HOMEBASE" mark and on which it actually uses the HOMEBASE mark are "External storage devices capable of local data storage and backup." *See* Li Decl., Ex. A. In the field of storage devices commonly recognized generic or descriptive terms include:

- Hard Drive

- NVR (Network Video Recorder)

- Hub

- Storage Bridge

These terms directly identify the product components.

Not only is "HOMEBASE" not found in any standard language dictionaries, it is also not found in any technical dictionaries as well. *See* Antonova Decl., ¶15, Ex. I. There is no established usage in the market or technical literature treating HOMEBASE as the name of such products or to describe such capabilities or functions of products.

A consumer encountering the term "HOMEBASE" cannot immediately identify the specific product or the technical features of the product.

Further, Anker's HOMEBASE trademark was granted registration by the United States Patent and Trademark Office without requiring that Anker prove secondary meaning, providing a

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 23
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

*strong* presumption that the HOMEBASE trademark is inherently distinctive - - the opposite of generic or descriptive. *KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005).

Plaintiff's arguments to the contrary are not based on evidence but on conclusory argument with no support. The amount of evidence necessary to overcome the presumption of distinctiveness and prove that a mark is generic is significant and requires evidence that the word "HOMEBASE" ". . . is *used or understood by consumers* as a generic name for security systems rather than a brand name. *Id.* at 606.

As the Ninth Circuit has clearly instructed:

We held in *Park 'N Fly* that 'Without evidence that to the consuming public the primary significance of the term [*Park 'N Fly*] is to denote the service *Park N' Fly* offers and not its source, we are without a sufficient evidentiary basis to find *Park 'N Fly's* mark generic.

*Id.* at 606 (citing *Park N Fly, Inc. v. Dollar Park & Fly, Inc.*, 718 F.2d 327, 330 (9th Cir. 1983), *rev'd on other grounds* 469 U.S. 189 (1985)). Based on this lack of required consumer evidence, the Ninth Circuit found there was no genuine issue of material fact as to whether the trademark "MICRO COLORS" is generic. *KP Permanent*, 408 F.3d at 606.

Likewise, Plaintiff does not submit *any* consumer evidence whatsoever that demonstrates that to the consuming public the primary significance of Anker's trademark HOMEBASE is to denote security systems as a category of products in a generic sense. Thus, this likelihood of confusion factor also favors confusion and demonstrates that Plaintiff is unlikely to succeed on the merits regarding Anker's trademark.

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 24
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

1    Plaintiff's only proffered support for its genericness argument is that T-Mobile

2    and AT&T have marketed a completely unrelated products branded with the trademark

3    "HOMEBASE" and that this use by an independent commercial entity (not a consumer)

4    on unrelated products makes Anker's "HOMEBASE" mark generic.  First of all, this is

5    not the evidence required by the Ninth Circuit in order for a jury to potentially determine

6    that a mark is generic.  Moreover, this use by T-Mobile of "HOMEBASE" is a trademark

7    use as a source identifier for T-Mobile's software App products.  *See* Antonova Decl., ¶

8    13, Ex. G.  The T-Mobile product uses the trademark "T-Mobile FamilyMode Home

9    Base" as a source identifier for its WiFi Software App product, not as a generic word for

10    a category of security systems.  *Id.,* Ex. G.

11    Likewise, Plaintiff's own Exhibit 5 shows that AT&T places a "™" symbol next

12    to "Home Base."  The use of the ™ symbol is a clear indication that AT&T treats "Home

13    Base" as a trademark, not as a descriptive term.  Accordingly, Plaintiff's own exhibits

14    confirm that "HOMEBASE" in the T-Mobile and AT&T products function as a source-

15    identifying trademark, and is not a generic name of a category of products or descriptive.

16           **b.  Plaintiff's use of the identical trademark "HomeBase" on identical
                    products does not constitute fair use**

17    For all the reasons outlined above, Plaintiff's use of the identical mark HomeBase

18    is not merely a descriptive one used to describe the function or capability of its products.

19    Plaintiff uses the identical "HomeBase" mark for its security system products, a word not

20    found in *any* dictionary in the English language nor any technical dictionary.  Such use of

21    a word that has no definition or meaning connected to the product is a prohibited

22    trademark use, improperly used to identify the source of Plaintiff's infringing goods and

23

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 25
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

is likely to confuse customers. *Brookfield Comms.*, 174 F.3d at 1066 (In light of the fact that Moviebuff is not a word in the English language when the term Moviebuff is employed it is not used as a descriptive word and is not a descriptive use).

Further, the definition of the two words "Home Base" that is found in standard language dictionaries has nothing whatsoever to do with Plaintiff's products and thus cannot possibly describe the products attributes. See *Infra* at p. 15. Plain and simple, Plaintiff's use of an arbitrary word for security systems not found in the English language is not a fair use and clearly constitutes trademark infringement.

### 5. Sophistication of Customers:

The standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer. *Brookfield Comms.*, 174 F.3d at 106 (citing *Ford Motor Co. v. Summit Motor Prods. Inc.*, 930 F.2d 277, 293 (3d Cir. 1991)). "Navigating amongst websites involves practically no effort whatsoever and arguments that web users exercise a great deal of care before clicking hyperlinks are unconvincing." *Id*.

Here the class of purchasers for Anker's and Plaintiff's products are the least sophisticated; internet consumer, exacerbating likely confusion.

### 6. Actual Confusion

Actual confusion constitutes persuasive proof that future confusion is likely. *Clicks*, 251 F.3d at 1265. The declaration of Larry Li provides examples of customers that have been confused into believing that they purchased one of Anker's Eufy "HOMEBASE" security systems when in reality they purchased one of Plaintiff's

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 26
Case No.: 2:25-cv-02635-RSM

FORSBERG & UMLAUF, P.S.
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

1    products that malfunctioned.  See Li Decl., ¶ 47, Ex. G.  This evidence is persuasive

2    proof that future confusion is likely.

3                        **7.      Intent**

4            This factor is neutral as the record in this matter is in infancy, and no discovery

5    has occurred.  This factor is unimportant and the lack of any evidence on this issue does

6    not impact the likelihood of confusion analysis.  However, as set forth in Anker's patent

7    and trademark infringement Complaint, filed in the Northern District of Illinois, Plaintiff

8    and its affiliates have copied Anker's product designs, advertising, and trademarks

9    indicating an intent to trade off of Anker's intellectual property assets, Anker's hard work

10   and Anker's expensive and time intensive research and development for Anker's

11   products.  See Li Decl., ¶ 7-10.  Moreover, Anker put Plaintiff and its affiliates on notice

12   of its trademark rights in its cease-and-desist letters and Plaintiff still sold and advertised

13   as infringing products using an identical trademark on the same products. Such facts

14   certainly show a willful disregard for Anker's intellectual property rights.

15           **D.      GCTC Is Unlikely to Succeed on Its Tortious Interference Claim**

16           As GCTC admits, for a claim for tortious interference under Washington law it must

17   show

18           (1) the existence of a valid contractual relationship or business expectancy; (2)

19           that defendants had knowledge of that relationship; (3) an intentional interference

20           inducing or causing a breach or termination of the relationship or expectancy; (4)

21           that defendants interfered for an improper purpose or used improper means; and

22           (5) resultant damage.

23

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 27
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

*Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997). GCTC bears the burden of establishing each of those elements, but actually fails to make a clear showing of any of them.

First, GCTC alleges that it "maintains valid and ongoing business relationships and expectancies with Amazon and its U.S. consumers through Amazon's marketplace."[3] Dkt. # 7, p. 20. But it provides no evidence of a contract with Amazon or any customers. Further, its bare allegation of relationships or expectancies with customers are not enough; "[t]o make a claim for tortious interference with a business expectancy, Plaintiff must identify a 'specific relationship' and 'identifiable third parties.'" *Stuc-O-Flex Int'l, Inc. v. Low and Bonar, Inc.*, No. 18-cv-01386, 2019 WL 4688803, at *6 (W.D. Wash. Sept. 26, 2019); *see also Group14 Techs., Inc. v. Nexeon Ltd.*, No. 22-cv-01354, 2023 WL 3599580, at *3 (W.D. Wash. May 23, 2023); *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, No. 20-cv-00882-MLP, 2021 WL 535128, at *5 (W.D. Wash. Feb. 12, 2021). "Unspecified references to 'customers' are not enough." *Stuc-O-Flex*, 2019 WL 4688803, at *6. Indeed, a plaintiff even identifying specific third parties with whom it could form a business relationship is not enough if it does not identify why it reasonably expected to win the business. *IMEG Consultants Corp. v. Delta E Consulting, LLC*, No. 24-cv-01916-RAJ, 2025 WL 1371507, at *4 (W.D. Wash. May 12, 2025). Thus, GCTC has failed to satisfy the first element of the *Leingang* test.

Second, citing no evidence, GCTC alleges "Anker necessarily knew, or had reason to know, that [GCTC] maintained an ongoing and valid business relationship with Amazon." Dkt. #

---

[3] GCTC's citation at the end of that sentence relates to the next clause of the sentence that asserts that Amazon is GCTC's exclusive commercial channel. *See* Dkt. # 8 ¶ 3. It does not support the existence of a contract with Amazon or any customers.

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 28
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

7, p. 20. Both the failure to cite any evidence and waffling on whether Anker actually knew doom GCTC's claim. "Had reason to know" is not enough to support a mental state of intent; GCTC's evidence-free argument in the alternative fails to satisfy the second element.

Third, GCTC asserts that "Anker intentionally interfered with [GCTC]'s business relationships and expectancies" by "submit[ing] trademark infringement complaints to Amazon." Dkt. # 7, p. 20. But it does not allege that the purported interference caused the required effect: GCTC does not argue that Anker's conduct "induc[ed] or caus[ed] a breach or termination of [a] relationship or expectancy." Further, GCTC cites only one case in arguing that Anker's complaints could support a claim for tortious interference, *SnapRays v. Lighting Defense Group*, 100 F.4th 1371 (Fed. Cir. 2024). Dkt. # 7, p. 21. *SnapRays* has nothing to do with tortious interference, it relates to personal jurisdiction in a patent infringement case. 100 F.4th at 1373. Plucking words out of that case and shoehorning them into a completely unrelated context does nothing to support GCTC's claim. There is no basis for the third element.

Fourth, GCTC asserts that "Anker employed improper means and acted with an improper purpose." Dkt. # 7, p. 21. Here, improper means requires "interference [to] be wrongful by some measure beyond the fact of the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." *Moore v. Comm. Aircraft Interiors, LLC*, 278 P. 3d 197, 200 (Wash. Ct. App. 2012). GCTC does not cite any statute, regulation, rule or established standard that Anker violated. Instead, curiously, it cites to the public interest section of a copyright and trademark infringement injunction case. Dkt. # 7, p. 21 (citing *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 889 (C.D. Cal. 2020)). That does nothing to show improper means. GCTC fails to make any argument that Anker acted with improper purpose, which would focus on Anker's intent and require a showing that Anker was

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 29
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

"motivated by greed, retaliation, or hostility." *Moore*, 278 P. 3d at 201 (quoting *Elcon Const. Inc. v. E. Wash. Univ.*, 273 P.3d 965, 971-72 (2012)). So GCTC has failed to satisfy the fourth element.

Finally, GCTC argues it "has suffered substantial damages as a direct result of Anker's conduct." Dkt. # 7, p. 21. But those purported damages – which are really nothing more than speculation – do not result from the termination of any relationship or expectancy. And GCTC cites nothing to support its argument that "[t]hese harms are concrete, ongoing, and irreparable, and they are precisely the type of commercial injuries tortious-interference claims are designed to remedy." *Id.* at 21-22. Accordingly, GCTC has failed to satisfy the fifth element.

In sum, GCTC has failed to make ***any*** showing of the elements of a tortious interference claim, and it would be improper to base a TRO on such a claim.

### E.    GCTC Is Unlikely to Succeed on Its Consumer Protection Act Claim

To establish a claim under the Washington Consumer Protection Act ("CPA"), GCTC – as a private plaintiff – must prove

> (1) the defendant has engaged in an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) the plaintiff has suffered injury in his or her business or property, and (5) a causal link exists between the unfair or deceptive act and the injury suffered.

*Leingang*, 930 P.2d at 297 (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)); *see also Potter v. Clear Recon Corp.*, No. 24-cv-01173-LK, 2025 WL 2223454, at *5 (W.D. Wash. Aug. 5, 2025). Again, GCTC fails to make a clear showing of any of those elements.

Because the CPA is intended to protect consumers as a group, not resolve private grievances, an "alleged act must have had the 'capacity to deceive a substantial portion of the

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 30
Case No.:  2:25-cv-02635-RSM

4927-7833-7669, v. 1

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

public.'" *Group14 Techs.*, 2023 WL 3599580, at * 4 (quoting *Hangman Ridge*, 719 P.2d at 535); *see also Blackstone Int'l, Ltd. v. E2 Ltd.*, No. 20-cv-1686-TSZ, 2022 WL 16553034, at *6 (W.D. Wash. Oct. 31, 2022). GCTC makes no such allegation and therefore fails to satisfy the first element of a CPA claim. And its allegation that Anker's conduct was unfair fail because Anker's actions were proper enforcement of a valid trademark. Similarly, the public interest is implicated only when "others have been or will be injured in exactly the same fashion." *Blackstone*, 2022 WL 16553034, at *6. "[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes the factual pattern from a private dispute to one that affects the public interest." *Hangman Ridge*, 719 P.3d at 538. Again, despite grandiose language regarding the potential harm if other trademark owners were "to abuse platform enforcement mechanisms," GCTC does nothing to identify a likelihood that this is anything more than a dispute between two parties. Dkt. # 7, p. 22-23. With regard to the other elements, GCTC provides no evidence, only argument. That does nothing to carry its heavy burden to obtain injunctive relief. Accordingly, GCTC has failed to make a clear showing of a likelihood to succeed on the merits of its CPA claim and its motion for TRO should be denied.

## F.  GCTC Has Suffered No Irreparable Harm

To obtain a TRO, GCTC must establish that it has suffered (or is likely to suffer immediately) irreparable harm. *Starbucks*, 144 S. Ct. at 1576. It "must show itself to be "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Gale Force Nine LLC v. Wizards of the Coast LLC*. No. 20-cv-01700-BAT, 2020 WL 7133507, at *3 (W.D. Wash. Nov. 25, 2020), *report and recommendation adopted*, No. 20-

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 31
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

cv-01700-RAJ-BAT, 2020 WL 7059238 (W.D. Wash. Dec. 2, 2020). The harm cannot be a speculative injury nor mere financial injury; instead, a plaintiff "must ***demonstrate*** immediate threatened injury." *Keane v. 40 Years, Inc.*, No. 18-cv-001768-RSM, 2019 WL 77436, at *5 (W.D. Wash. Jan. 2, 2019) (quoting *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original)); *see also Gale Force Nine*, 2020 WL 7133507, at *3. GCTC cannot make that demonstration.

The only harm that GCTC speculates can be tied to Anker's enforcement of its trademark is financial harm that is directly linked to the removal of its infringing products; if GCTC's products were restored (whether immediately or in the future), that speculative harm would be quickly undone. Specifically, the only evidence GCTC submits is that traffic to the Amazon Aosu store is down by approximately 50% and a vague statement that BSR positions "for the affected products have collapsed." Dkt. # 8, ¶ 14. Neither of those statements has any value in proving irreparable harm.

Even assuming *arguendo* that traffic to the Amazon Aosu store may have decreased, GCTC does nothing to correlate that diminution to the change in the products removed (or, for that matter, the products GCTC voluntarily keeping off the website). For example, GCTC does not indicate what percentage of products, sales, or marketing the infringing products constitute. It could very well be that removing of infringing products has improved GCTC's standing, that a bigger decrease would be expected based on the product removed, that the decrease is expected seasonally, or that it has stopped marketing to the same degree. We simply do not know – GCTC has chosen not to share the evidence that is exclusively in its hands so there is no way to determine whether the alleged harm is reparable by money or not. By choosing not to share the

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 32
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

evidence and relying only on a naked statement of diminished traffic, GCTC has failed to support its claim for irreparable harm.

Second, GCTC asserts that its BSR positions "have collapsed." Again, we have no idea what that means, or whether it is easily reparable or not; GCTC has provided no evidence to support the claim. But the claim also suffers from terminal vagueness. There can be no irreparable harm found where there are only conclusory and speculative statements of injury. *Gale Force Nine*, 2020 WL 7133507, at *4 (quoting *ADM Milling Co. v. Columbia Plateau Producers, L.L.C.*, No. 20-cv-0343-TOR, 2020 WL 5802344, at *5 (E.D. Wash. Sept. 29, 2020)). Thus, that second statement cannot show irreparable injury.

GCTC cites two cases in its argument, neither of which says what GCTC claims it does. First, GCTC cites *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874 (C.D. Cal. 2020) to argue that "[c]ourts have repeatedly recognized that loss of a primary distribution platform and threatened exclusion from a marketplace constitutes irreparable harm." Dkt. # 7, p. 24. The case says nothing of the sort. Rather, it stands for the unremarkable proposition that an unrebutted showing of "[r]eputational harm and loss of goodwill can be irreparable harm." *Id.* at 888. Second, GCTC cites *Changsha Suda Elec. Com. LLC v. Guangzhou Yimei Cosmetics Co.*, No. 2:25-cv-01978-LK, 2025 WL 3022254 (W.D. Wash. Oct. 29, 2025), for the proposition that "the complained-of conduct 'effectively grant[s] [the trademark owner] a *de facto* injunction without judicial oversight,' thereby shifting the burden to the accused seller and inflicting immediate market harm." Dkt. # 7, p. 25. Again, GCTC has misconstrued the case. Changsha Suda did argue that the patentee had effectively obtained a *de facto* injunction, but supported its claim for irreparable harm with an unrebutted (and unquestioned) showing of "loss of access to the U.S. marketplace, disruption of advertising efforts, damaged reputation, and lost customer

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 33
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

relationships." *Id.* at *7. It was that latter showing – the evidence missing here – on which the *Changsha Suda* court based its finding of irreparable harm.

In short, GCTC has not provided sufficient evidence to document any claim of harm that cannot be remedied with monetary damages.

### G. The Balance of the Equities Favors Denial of a Temporary Restraining Order

As shown above, Anker has shown that its HOMEBASE trademark is valid and infringed by GCTC. If GCTC were permitted to sell its inferior, infringing goods on Amazon, it would likely harm consumers by creating confusion and irreparably harm Anker by creating an association with those inferior goods. Thus, the balance of the equities favors denying the motion for TRO.

Furthermore, GCTC has failed to attempt to mitigate any harm. It asks the Court to undercut the robust, effective Amazon trademark complaint system without showing so much as an attempt to use the appeals process built into the system to provide the remedies that it seeks. GCTC itself admitted that the appeal process worked for it for several products, and yet it still has not restored those product listings to its site. Dkt. # 8, ¶¶ 7, 8. That is, even where it has successfully appealed, it has refused to accept the benefit of the appeal. In addition, GCTC does not indicate whether it has sought to appeal any of the other listings. Unquestionably, that is an option available to GCTC; its failure to avail itself of the option weighs heavily against granting it the extraordinary remedy of a TRO. There is no reason for the Court to bend over backwards when GCTC will not help itself.

GCTC's only excuse for not using the appeal process is a hypothetical concern over its Account Health. Dkt. # 8, ¶ 8. But it provides no indication or evidence of whether its Account Health is at risk. It has the burden of proving that the balance of equities supports it, yet omits

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

the evidence that could show if its concern is a reasonable one. That omission of evidence exclusively in GCTC's hands at this point should be held against it and the balance of the equities should be found to weight against granting a TRO.

### H. The Public Interest Strongly Disfavors Entering a Temporary Restraining Order

Given Anker's strong showing of trademark validity and infringement, and the powerful public interest in avoiding consumer confusion, this factor strongly disfavors entering the requested TRO. Further, there is a strong interest in allowing parties to resolve their own disputes without court intervention, and to allow Amazon's expedited intellectual property appeal process to play out. GCTC cannot rebut those points.

In its argument, GCTC relies on two cases, neither of which stands for the proposition for which GCTC cites it. First, GCTC cites *Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866 (C.D. Cal. 2021), but changes the meaning of that case's language through eliminating the condition precedent for the court's conclusion. Dkt. # 7, p. 27. What *Medcursor* actually said was

> ***Where the moving party has demonstrated a likelihood of success on patent invalidity, and likely irreparable harm flowing from the inability to reach its customers on Amazon,*** the public interest favors preventing a competitor from using a seemingly innocuous intellectual property rights-protection notice to effectively shut down a competitor's business.

543 F. Supp.3d at 880 (emphasis added). By omitting the first half of the sentence, GCTC fundamentally changed the sentence's meaning. Second, GCTC cites *Design Furnishings, Inc. v.*

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 35
Case No.: 2:25-cv-02635-RSM


**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

*Zen Path LLC*, No. 10-cv-02765-WBS, 2010 WL 4321568, at *5 (E.D. Cal. Oct. 21, 2010), as criticizing Amazon's intellectual property enforcement policies. Dkt. # 7, p. 27-28. But *Design Furnishings* involved listings on eBay, not Amazon, where the policies are "designed to avoid eBay's liability for intellectual property infringement.". *Id.* at *5. That is not what Amazon's policies do – they allow for appeals, like the one that GCTC successfully pursued. Thus, *Design Furnishings* is inapposite.

In light of Anker's strong showing on trademark validity and infringement, there is nothing to support GCTC's claims regarding the public interest.

## I. If the Court Were to Enter a Temporary Restraining Order, It Should Require a Bond in the Amount of GCTC's Potential Profits

GCTC argues that no bond should be required if Anker is wrongly enjoined based on two premises: first, that Anker had not yet shown that a bond is needed and, second, that "Anker holds no valid or enforceable rights that would be impaired by the temporary restraint, and it will suffer no prejudice from being required to withdraw or refrain from initiating further unsubstantiated trademark complaints outside judicial channels." DI 7, p. 28-29. Neither argument has any merit.

The first argument simply makes no sense – Anker had no forewarning of GCTC's motion and therefore could not have made an anticipatory showing of the harm that the improvident grant of the motion would cause. The second argument is no better; GCTC is essentially arguing that no bond should be required because there is no chance that Anker could be wrongfully enjoined. It assumes that it will prevail on the ultimate merits of the case and that Anker's trademark complaints are "unsubstantiated." DI 7, p. 29. That circular reasoning cannot stand in the context of setting a bond. Indeed, the bond requirement is based on the opposite

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 36
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

likelihood, that Anker would be wrongly enjoined and would later prevail on the merits. And as discussed above, Anker prevailing on the merits of its trademark infringement claim is the most likely outcome of this litigation.

As a final gambit, GCTC argues that "setting no bond is reasonable and consistent with recent decisions in similar cases." DI 7, p. 29. But it cites only one case, *Changsha Suda*, and that case is nothing like this one. There, an accused design patent infringer clearly established that both the patent owner and it had been selling a product with the patented design (and third parties had obtained foreign patents covering the same design) more than one year before the filing of the asserted patent. 2025 WL 3022254 at *6. The patent owner presented no response to the invalidity case despite having notice of the proceedings. *Id.* at *4 n.4. Thus, the asserted patent was unquestionably invalid under 35 U.S.C. § 102(a)(1). That is a fundamentally different situation from this case – Anker disputes GCTC's allegations and, indeed, has established that GCTC is infringing its HOMEBASE trademark. At a minimum, GCTC must post a bond based on the remedies available to Anker.

Along with any other damages suffered from GCTC's infringement, one remedy available to Anker is disgorgement of GCTC's profits. *See* 17 U.S.C. § 1117(a). "In assessing profits the [trademark owner] shall be required to prove [the infringer]'s sales only; [the infringer] must prove all elements of cost or deduction claimed." *Id.* Thus, if it is wrongly enjoined, the appropriate amount of the bond would presumptively be GCTC's sales of infringing goods. According to GCTC itself, the best estimate of that amount would be $151,191 per day. If any injunction is entered, Anker therefore requests that the bond be set, at $151,191 per day of the term of the injunction; for a fourteen-day TRO, that amount would be $2,116,674.

### III.    CONCLUSION

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 37
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

For all the above reasons, Defendant respectfully requests that the Court deny the Plaintiff's motion for a temporary restraining order and deny any and all relief requested by Plaintiff.

Dated: December 31, 2025

**POTOMAC LAW GROUP, PLLC**

By: */s/ William D. Fisher*
      William D. Fisher, WSBA No. 27475
      1448 NW Market Street, Suite 500
      Seattle, WA 98107
      Phone: (206) 599-8888
      Email: wfisher@potomaclaw.com

      Elissa B. Reese (*pro hac vice forthcoming*)
      1717 Pennsylvania Avenue, NW
      Suite 1025
      Washington, DC 20006
      Phone: (202) 558-5557
      Email: ereese@potomaclaw.com

**YOUNGZEAL LLP**

Tianqin Zhao (*pro hac vice forthcoming*)
9355 John W. Elliott Dr., Suite 25555
Frisco, Texas 75033
Phone: (585) 748-3732
Email: zhao@yzlaw.com

**ANJIE BROAD LAW FIRM**

Fan Liang (*pro hac vice forthcoming*)
Zhiyu Liang (*pro hac vice forthcoming*)
14th Floor, North Tower, Beijing Kerry Centre
No. 1 Guanghua Road
Chaoyang District, Beijing 100020, China
Phone: +86 (10) 8567-5988
Email: alex_liang@anjielaw.com
      liangzhiyu@anjielaw.com

*Attorneys for Plaintiff Guangzhou Chaoyan Technology Co., Ltd.*

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 38
Case No.: 2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON 98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1

and

By: */s/ Ryan J. Hesselgesser*
    Ryan J. Hesselgesser, WSBA #40720
    Forsberg & Umlauf, P.S.
    401 Union St., Suite 1400
    Seattle, WA 98101
    Phone: (206) 689-8500
    rhesselgesser@forum.law
    *Attorneys for Defendant*
    *Anker Innovations Limited*

**LIPPES MATHIAS LLP**

By: */s/ Joshua R. Rich*
    Joshua R. Rich (*pro hac vice forthcoming*)
    332 S. Michigan Ave., Suite 900
    Chicago, IL 60604
    Phone: (872) 254-5500
    Email: jrich@lippes.com

    Celeste M. Butera (*pro hac vice forthcoming*)
    445 Broadhollow Road, Suite 420
    Melville, New York 11747
    Phone: (516) 820-1500
    Email: cbutera@lippes.com

    Anna Antonova (*pro hac vice forthcoming*)
    420 Lexington Avenue, Suite 2005
    New York, New York 10170
    Phone: (332) 345-4500
    Email: aantonova@lippes.com

    *Attorneys for Defendant Anker Innovations*
    *Limited*

*I certify this memorandum contains 8,281 words, in compliance with the Local Civil Rules.*

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a TRO - 39
Case No.:  2:25-cv-02635-RSM

**FORSBERG & UMLAUF, P.S.**
ATTORNEYS AT LAW
401 UNION STREET • SUITE 1400
SEATTLE, WASHINGTON  98101
(206) 689-8500 • (206) 689-8501 FAX

4927-7833-7669, v. 1